IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KATHERINE CRAWFORD, *et al.*<br><br>　　　　Plaintiffs<br><br>v.<br><br>KHALILAH ROBINSON, *et al.*<br><br>　　　　Defendants | CIVIL ACTION<br>NO. 14-04148 |

**PAPPERT, J.**                                                                                                 **AUGUST 12, 2015**

<u>**MEMORANDUM**</u>

　　　　In 1998, Lorraine Crawford allegedly obtained full title to a property in Philadelphia by fraudulently inducing two of her siblings to sign a deed and allegedly forging the signatures of two others. (Am. Compl. ¶¶ 30-32, Doc. No. 26.) The siblings whose signatures were allegedly forged are the plaintiffs in this case, along with another sibling whose signature was absent from the deed, even though she had an interest in the property when the deed was executed. (*Id.* ¶ 33.) They initiated this quiet title action to determine the allocation of interests in the property.

　　　　As part of this action, they seek a declaration that any mortgages or liens by which Lorraine encumbered the property encumber only that portion of the property to which she had title before the fraudulent transfer. Defendants the Department of Housing and Urban Development ("HUD") and U.S. Bank, National Association ("U.S. Bank") hold mortgages on the property. (*Id.* ¶ 7.) Defendant the United States of America holds a federal tax lien against Lorraine Crawford and her property. (*Id.* ¶ 9.) HUD and the United States collectively, and U.S. Bank individually, move to dismiss the claims against them, arguing both that the Court lacks subject matter jurisdiction over the dispute and that the amended complaint fails to state a claim upon which relief can be granted. The Court denies the motions.

**Background**

The property at issue is located at 1331 South 17th Street, Philadelphia, PA (the "Property"). The story begins in November 1971 when Alfred Bowles and his wife Sharon transferred the Property to Sarah Crawford, Alfred's mother. (Am. Compl. ¶ 23.) Sarah was married to James Crawford, Sr. at the time, but the Property was deeded to Sarah individually. (*Id.*) Sarah and James had six biological children together: James Crawford, Jr., Felicia Crawford, Rochelle Brown, Lorraine Crawford, Janice Crawford-Sharif, and Katherine Crawford. (*Id.* at ¶ 18.) Alfred Bowles was Sarah's biological son and James Sr.'s unadopted stepson. (*Id.* at ¶ 25.)

Sarah died intestate on May 21, 1978. (*Id.* at ¶ 24.) Under Pennsylvania's rules of intestate succession, a 1/2 share of the Property passed to her surviving husband James, Sr., and the remaining half passed in equal 1/14th shares to each of her seven surviving biological children. (*Id.* at ¶ 24.) James, Sr. died intestate on June 5, 1991. (*Id.* at ¶ 25.) Under Pennsylvania's rules of intestate succession, his 1/2 share of the Property passed in equal 1/12th shares to his six surviving biological children. (*Id.*) Combined with the 1/14th share that each of those children had previously inherited from their mother, the six Crawford children were each left with a 13/84th share in the Property, while Alfred Bowles continued to hold a 1/14th share. (*Id.* at ¶ 26.)

Upon James, Sr.'s death, Lorraine Crawford "caused herself to be appointed sole Administrator" of James, Sr.'s estate without the consent of all of his heirs. (*Id.* at ¶ 27.) On August 14, 1998, a deed was executed purporting to transfer the Property for $1.00 consideration from James, Sr.'s estate and his heirs to Lorraine Crawford individually. (*Id.* at ¶ 28, Ex. B.) The deed was recorded on November 3, 1998. (*See id.*)

Plaintiffs allege that the deed was a fraud and a forgery. (*Id.* at ¶ 17.) The deed does not contain the signatures of Alfred Bowles or Janice Crawford-Sharif, both of whom had an interest in the Property at the time. (*Id.* at ¶¶ 33, 34.) Additionally, Plaintiffs allege that the signatures of Katherine Crawford and Rochelle Brown were forged. (*Id.* at ¶¶ 31, 32.) Finally, Plaintiffs allege that James Crawford, Jr. and Felicia Crawford signed the deed under false pretenses after Lorraine told them that it was solely for the purposes of getting a loan to remodel the Property. (*Id.* at ¶ 30.) They were not advised that they were giving up their ownership interest in the Property. (*Id.*)

Lorraine Crawford began mortgaging the Property soon after the deed was recorded. (*Id.* at ¶ 35.) She ultimately recorded seven mortgages on the Property between November 1998 and January 2012. (*Id.* at ¶¶ 35-48.) Two of those mortgages are held by HUD and U.S. Bank, respectively, and are at issue here. The first mortgage at issue was recorded on January 26, 2007 for $108,500 from Argent Mortgage Company, LLC. (*Id.* at ¶ 42, Ex. J.) On September 26, 2007, a mortgage assignment was recorded purporting to assign this mortgage to U.S. Bank. (*Id.* at ¶ 44, Ex. K.) The second relevant mortgage was recorded on January 13, 2012 for $50,000 from the Pennsylvania Housing Finance Agency ("PHFA"). (*Id.* at ¶ 47, Ex. M.) On May 29, 2013, a mortgage assignment was recorded purporting to assign this mortgage to HUD. (*Id.* at ¶ 48, Ex. N.) Plaintiffs allege that they received no benefit from the funds that Lorraine Crawford may have received in exchange for executing these or any other mortgages on the Property. (*Id.* at ¶ 51.)

Lorraine Crawford died on December 18, 2013. (*Id.* at ¶ 49, Ex. O.) Lorraine was preceded in death by her sister Felicia, who died on May 11, 2005. (*Id.* at ¶ 18.) Her brother James, Jr. died on July 5, 2014. (*Id.*) The surviving children of Sarah and James, Sr. —

3

Katherine Crawford, Rochelle Brown, and Janice Crawford-Sharif — filed an action to quiet title in the Philadelphia County Court of Common Pleas.[1]  They named as defendants Alfred Bowles, all of the known heirs of Lorraine, James, Jr., and Felicia, and the holders of any known outstanding mortgages or liens, including the United States, HUD, and U.S. Bank.  HUD removed the action to this Court pursuant to 42 U.S.C. § 1441(a), basing the Court's original jurisdiction on 28 U.S.C. § 1442(a)(1) and 28 U.S.C. § 1444.[2]

Plaintiffs seek, among other things, (i) a judicial determination that the allegedly forged and fraudulent deed is void, (ii) a declaration that the current interests in the Property are in accordance with the shares described above, and (iii) a determination that any encumbrances that Lorraine caused to be placed on the Property encumber only the 13/84th share of the Property held by Lorraine's lawful heirs.  (*Id.* at 13.)

HUD, the United States, and U.S. Bank (collectively "Moving Defendants") move to dismiss Plaintiffs' amended complaint.  (*See* HUD Mot. Dismiss, Doc. No. 29; U.S. Bank Mot. Dismiss, Doc. No. 30.)  They first argue that Plaintiffs lack standing to bring claims against them because there is no adversarial relationship between them and Plaintiffs, nor any allegation that they caused Plaintiffs' injuries.  Secondly, they argue that under the facts alleged, they are *bona fide* creditors who cannot be deprived of the benefits of their respective mortgages.  U.S. Bank additionally argues that the applicable statute of limitations and the doctrine of laches bar Plaintiffs' claims.  They move for dismissal under Federal Rule of Civil Procedure 12(b)(1) on the standing issue and Federal Rule of Civil Procedure 12(b)(6) on the remaining issues.

---

[1]  James, Jr. was initially named as a plaintiff.  Unfortunately, he passed away while the action was pending.  Plaintiffs subsequently amended their complaint to remove James, Jr. as a plaintiff and name his surviving wife as a defendant.

[2]  28 U.S.C. § 1442(a)(1) permits removal of any state court action "that is against or directed to" an agency or officer of the United States.  28 U.S.C. § 1444 permits removal of any state court action brought against the United States to quiet title to real property on which the United States has or claims a mortgage or other lien.  The Court finds that removal was proper under these sections.

**Legal Standard**

A Rule 12(b)(1) motion attacks a court's jurisdiction over the subject matter of a dispute. A 12(b)(1) motion can present either a facial attack or a factual attack on the court's jurisdiction. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). When considering a facial attack, the court "must consider the allegations of the complaint as true." *Id.* When considering a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." When a defendant challenges subject matter jurisdiction, the plaintiff, as the party asserting jurisdiction, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

A Rule 12(b)(6) motion tests the sufficiency of the factual allegations in the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). When confronted with a 12(b)(6) motion, a district court must conduct a two-step analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the district court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. Then, it "must determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). When making this determination, the court can consider "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The district court must "construe the complaint in the light most favorable to the plaintiff . . . ." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

**Discussion**

The Court begins its analysis with the threshold issue asserted by Moving Defendants that this Court lacks subject matter jurisdiction over the dispute. Moving Defendants argue that the allegations in the amended complaint are insufficient to demonstrate that Plaintiffs have standing so as to invoke the jurisdiction of this Court. This presents a facial attack on the Court's jurisdiction, and the Court accordingly "accepts the plaintiff's allegations as correct and draws inferences in the plaintiff's favor." *Feingold v. Liberty Mut. Group*, 847 F. Supp. 2d 772, 773 (E.D. Pa. 2012); *see also Mortensen*, 549 F.2d at 891.

Standing is fundamental to "the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976). "[T]he irreducible constitutional minimum of standing" contains three elements: (i) the plaintiff must have suffered an injury in fact, not an injury that is not conjectural or hypothetical, (ii) the injury has to be fairly traceable to the challenged action of the defendant, and (iii) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision on the merits of the case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Moving Defendants present myriad reasons why they believe Plaintiffs fail to demonstrate these elements. They argue that (i) there is no adversarial relationship between Plaintiffs and Moving Defendants, (ii) Plaintiffs alleged injury is not traceable to Moving Defendants, (iii) there is no controversy because there is no pending foreclosure action, and (iv) Plaintiffs' injury cannot be redressed by a favorable outcome in the action. (*See* HUD Mot. Dismiss at 3-5; U.S. Bank Mot. Dismiss at 8-9.)

These arguments overlook the nature of a quiet title action. A plaintiff may bring an action to quiet title "to compel an adverse party to file, record, cancel, surrender or satisfy of

6

record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land." Pa.R.C.P. 1061(b)(3). The purpose of such an action "is to resolve a conflict over an interest in property." *Nat'l Christian Conference Ctr. v. Schuylkill Twp.*, 597 A.2d 248, 250 (Pa. Commw. Ct. 1991); *see also Siskos v. Britz*, 790 A.2d 1000, 1006 (Pa. 2002) ("A party will file a [quiet title action] when she is not in possession, does not have the right to possess the land, and wishes to determine all rights in the land.").

Plaintiffs' allegations sufficiently satisfy the elements of constitutional standing. Plaintiffs allege that they have an ownership interest in the Property. They allege that HUD and U.S. Bank have interests in the Property by way of their respective mortgages. They allege that the United States has an interest in the Property through its tax lien. Plaintiffs seek a determination that the mortgages and tax lien encumber only the 13/84th interest in the Property allocated to Lorraine Crawford's heirs. Plaintiffs' interests are directly opposed to the interests of Moving Defendants, who argue that the mortgages and tax lien encumber the entire Property. Plaintiffs' alleged injury, having cloud on their title, is directly traceable to the mortgages and tax lien. Finally, a favorable outcome in the suit will remedy that injury by having the cloud to their title removed, irrespective of any present or future foreclosure action. Plaintiffs therefore have standing such that the Court has jurisdiction over the subject matter of the dispute.

HUD and U.S. Bank next argue that as *bona fide* creditors, they cannot be deprived of the benefit of their mortgages, even assuming that the deed transferring the Property to Lorraine Crawford was invalid. They contend that under Pennsylvania law, "a mortgagee who lends money upon the security of the title of a mortgagor, and who has neither actual nor constructive knowledge of any claims of third parties holds the title or lien so acquired free of any such secret equities." (U.S. Bank Mot. Dismiss 13.) They believe that they were entitled to rely on the duly

7

recorded deed transferring title to the Property solely to Lorraine Crawford so that any subsequent attack on the transfer has no effect on their mortgages.

This argument fails to appreciate the distinction between property transfers that are *void* and those that are merely *voidable*.  In all of the cases cited by HUD and U.S. Bank, a deed transferring property was secured by fraud or deceit, and was therefore voidable.  Nevertheless, the transferee secured mortgages on the property before the original transaction was rescinded.  In such a case, the mortgagee is entitled to rely on the strength of the mortgagor's title — title that is valid at the time the mortgage is secured, even though the transaction giving the transferee/mortgagor title may later be revoked.  *See Puharic v. Novy*, 176 A. 233, 235 (Pa. 1934) ("A deed procured by fraud is ordinarily held voidable merely; and title passes to the grantee subject to the grantor's right to defeat it.").

For example, in *Haggerty v. Moyerman*, 184 A. 654 (Pa. 1936), Samuel Moyerman obtained title to two properties through fraudulent misrepresentations.  While possessing title to the properties, he obtained mortgages against them.  The original transfers were later rescinded based on the fraud.  The Pennsylvania Supreme Court, however, concluded that "[a]lthough the levy and sale were a fraud on plaintiff's rights, it does not necessarily follow that plaintiff is entitled to satisfaction of the mortgage held by the defendant association." *Id.* at 656.  The mortgagee, who had no notice that title had been obtained by fraud, had relied on Moyerman's title when grating the mortgage.  It therefore was entitled to maintain its mortgages on the properties even when the original transfer was voided.  *See also, e.g.*, *Kepler v. Kepler*, 199 A. 198, 202 (Pa. 1938) ("An innocent mortgagee for value is not bound by secret liens or equities even though the mortgagor's title was obtained by fraud.").

Here, however, Plaintiffs do not allege that Lorraine Crawford obtained title through fraud. Rather, they allege that their signatures were forged on the deed, making the transfer *void ab initio*. *See In re Tippet*, No. 03-18370, 2014 WL 2495404, at *3 (Bankr. E.D. Pa. Oct. 28, 2004) ("[U]nder Pennsylvania law, a forged deed cannot convey an interest in real property."); *Harris v. Harris*, 239 A.2d 783, 784 (Pa. 1968) ("[A] forged . . . instrument is not binding on any person and is wholly inoperative to transfer any title or right to property whether the holder is an innocent or guilty purchaser."). If Plaintiffs' signatures on the deed were forged, then no transfer of their interests in the Property to Lorraine Crawford ever occurred. It follows that Lorraine Crawford could not subsequently transfer or encumber those interests because she never had them in the first place. Therefore, any mortgage she took out on the Property could encumber only the 13/84th interest that passed to her through her parents' deaths.

The Pennsylvania Supreme Court case of *Thees v. Prudential Ins. Co. of Am. of Newark*, 190 A. 895, 896 (Pa. 1937) is on point. There, a husband and wife owned a property as tenants by the entirety. The wife was approached by her brother, who was in dire financial straits. The brother presented the wife with a deed to transfer the property to him, and the wife signed. The husband's signature and the signature of a notary were later forged. The brother used the forged deed to procure a mortgage on the property. When the husband discovered the forgery some years later, he sued to have the deed and the mortgage canceled.

The trial court cancelled both the deed and the mortgage and the Pennsylvania Supreme Court affirmed. It recognized that the mortgagee was "innocent in the transaction" and "in an unfortunate position." *Id.* It had "advanced money to the holder of record title of real estate, relying upon the apparent accuracy of signatures, acknowledgment, and record . . . ." *Id.* Nevertheless, the mortgagee's equitable rights did not rise higher than the husband's, who was

9

also an "innocent victim" "in complete ignorance" of the forgery. *Id.* The Court cancelled the deed and mortgage accordingly. *See, also e.g.*, *Warehouse Builders & Supply Inc. v. Perryman*, 257 A.2d 349, 350 (Pa. Super. Ct. 1969) ("[A] forged deed is a void deed even in the hands of an innocent purchaser"); *Flitcraft v. Commw. Title Ins. & Trust Co.*, 60 A. 557, 557 (Pa. 1905) (cancelling mortgage obtained upon forged deed because "the deed was thereby avoided, and could not thereafter be used in any way whatsoever to the prejudice of the complainant."). Because the deed could not pass good title if forged, the Court denies the motions to dismiss on this point.

U.S. Bank further argues that Plaintiffs' claims are barred by the statute of limitations and the doctrine of laches. The Court rejects both arguments. First, under Pennsylvania law, a quiet title action to declare that a mortgage does not encumber a property has no statute of limitations because title to "the property is clouded by the questioned mortgage each day that it remains." *Kean v. Forman*, 752 A.2d 906, 908 (Pa. Super. Ct. 2000). Therefore, U.S. Bank's attempt to impose on Plaintiffs the two-year fraud statute of limitations fails. *See, e.g.*, *id.* (refusing to apply limitations period in Uniform Fraudulent Transfer Act to action to remove cloud on title).

Furthermore, at this stage of the proceedings, the Court cannot bar Plaintiffs' claims under the doctrine of laches unless the allegations on the face of the amended complaint show inexcusable delay and prejudice to the Defendants because of the delay. *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138 (3d Cir. 2005) (listing elements of laches); *Coughlin v. Ryder*, 260 F. Supp. 256, 260 (W.D. Pa. 1966) ("It has long been held that a motion to dismiss under Rule 12 will be sustained where laches can be determined without the necessity for further factual inquiry."). Where, as here, "a plaintiff files suit within the applicable statute of

limitations, the burden is on the defendant to establish laches as an affirmative defense." *Gloster v. Relios, Inc.*, No. 02-cv-7140, 2006 WL 1737800, at *1 (E.D. Pa. June 26, 2006).

U.S. Bank has not met its burden. The allegations in the amended complaint show that Plaintiffs waited nearly 15 years after the allegedly forged deed was recorded before bringing this action. Nevertheless, there are no factual allegations in the amended complaint to allow the Court to determine whether that delay was undue or whether it has prejudiced U.S. Bank. *See, e.g.*, *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993) ("The strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleading, are not readily applicable to a determination of laches."). The Court accordingly denies U.S. Bank's motion on this point without prejudice for U.S. Bank to reassert the defense at summary judgment if appropriate. *See, e.g.*, *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 750 (E.D. Pa. 2014) ("[T]he Court declines to dismiss plaintiffs' Complaints based on laches without prejudice to defendants' right to raise the issue by motion for summary judgment.").

An appropriate order follows.

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.